**Lyman B. THOMPSON,
Petitioner-Appellant,**

v.

**Frank BLACKBURN, Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, State of Louisiana, Respondents-Appellees.**

**No. 84–4684
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 12, 1985.

Rehearing Denied Dec. 11, 1985.

Lyman B. Thompson, pro se.

James Allen Norris, Jr., Earl Cox, Asst. Dist. Atty., Fourth Judicial Dist., Monroe, La., for respondents-appellees.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Lyman B. Thompson, a defendant in a Louisiana state criminal case, was charged with one count of incest and with three counts of aggravated crime against nature. The bill of information alleged that these crimes had been committed on Thompson's 15-year-old daughter and two sons and had occurred "between January 1, 1977 and October 15, 1979." Pursuant to a plea bargain, Thompson pleaded guilty to two charges, incest and aggravated crime against nature committed on his daughter, and the state dismissed the two remaining charges involving Thompson's sons. Thompson was sentenced to ten years at hard labor on each count, the sentences to run consecutively. Apparently, both sentences were to be served without benefit of parole, probation, or suspension of sentence.

The defendant now seeks federal habeas corpus relief on several grounds. His primary contention is that his aggravated-crime-against-nature sentence violates the constitutional guarantee against ex post facto punishment insofar as it denies him parole or other amelioration because the state law imposing those penalties was not effective until after he actually committed the criminal acts. Thompson also contends that the sentence imposed for incest is illegal, under state law, insofar as it denies him a possibility for probation. In addition, he argues that the district court erred in not granting his motion for the appointment of a sanity commission and a mental competency hearing; that his guilty plea was involuntary because he lacked the mental competency to enter it, and that he received ineffective assistance of counsel because his attorney failed to pursue an insanity defense. We find that Thompson is entitled to an evidentiary hearing on his ex post facto claim, and, therefore, reverse the district court's judgment denying relief. Rejecting all of his other arguments, we remand the case for further proceedings consistent with this opinion.

I.

The information alleged that both crimes to which Thompson pleaded guilty occurred "between January 1, 1977 and October 15, 1979." Thompson contends that he did not, in fact, have any sexual relations with his daughter at any time after August, 1979. The date the crime was committed is significant because on September 7, 1979, an amendment to section 14:89.1(B) of the Louisiana Revised Statutes became effective. This amendment required that a sentence imposed for an aggravated-crime-against-nature offense be served without benefit of parole, probation, or suspension of sentence, changing the earlier rule that permitted these ameliorations of the sentence.[1]

There is no evidence in the present record indicating that Thompson had sexual relations with his daughter after September 7. When interrogated by police officers on October 16, the day of his arrest, Thompson said that the last time he had had "any kind of sex with" his daughter was "approximately 2½ to 3 months ago." Thompson bolsters his claim with his arrest warrant, which refers to a statement to the same effect his daughter allegedly made to a state police investigator.

The state argues that Thompson's plea of guilty admits his commission of the offense up until October 15, as alleged in the

---

1. La.Rev.Stat.Ann. § 14:89.1(B) (West Supp. 1985) provides:

Whoever commits the crime of aggravated crime against nature shall be imprisoned at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole.

information. Therefore, according to the state, the no-mitigation provision of Thompson's aggravated-crime sentence does not constitute an ex post facto application of the amended statute.

The federal district court, relying on *Dobbert v. Florida*,[2] did not address the state's argument on this issue because it found the amendment to be merely procedural and not such a substantive change as to constitute ex post facto punishment. In *Dobbert*, however, the petitioner was convicted of a murder committed when Florida's death penalty statute, later held to be unconstitutional, was in effect. This former statute left sentencing to the jury. The death penalty statute in effect after the *Dobbert* murder had been committed modified the sentencing procedure. It required a separate sentencing hearing before a judge and jury on all capital felony convictions. The jury was to render the judge an advisory opinion on aggravating and mitigating circumstances and the judge was to make the final determination on whether to impose capital punishment in writing. In *Dobbert*, the jury recommended life imprisonment, but the judge imposed the death sentence pursuant to the new statute. The Supreme Court held that the sentence did not constitute ex post facto punishment because the changes in the statute were procedural and on the whole ameliorative.[3]

The 1979 amendment to section 14:89.1 is in no way ameliorative. By eliminating the possibility of parole, probation or suspension of sentence for anyone convicted of the aggravated-crime offense, the amendment simply increases the penalty for an already-defined crime. The change does not merely change the sentencing procedure, but alters the substantive sentence to be imposed.

■ A statute that increases the penalty for an offense previously committed violates the Constitution.[4] In *Weaver v. Graham*,[5] the Supreme Court found a statute that reduced automatic good-time credits ex post facto as applied to the petitioner, who committed the offense before the changes, even though the new statute provided for additional good-time credits at the discretion of the authorities. Our own precedents reach the same conclusion. In *Beebe v. Phelps*,[6] we held that a Louisiana statute, enacted after the prisoner had been sentenced, was ex post facto as applied to the prisoner because its application, upon the prisoner's violation of parole, resulted in the forfeiture of 180 days of the prisoner's previously earned good time. We find, therefore, that, if Thompson did not commit the crime-against-nature offense after September 7, 1979, the sentence as imposed constituted ex post facto punishment.

■ Thompson's guilty plea did not constitute, as a matter of law, an admission to committing the crime between September 7, 1979 and October 15, 1979. Interpreted fairly, the plea admits nothing more than that the offense might have been committed anytime during the almost three-year period covered by the charge.

The plea bargain entered into by Thompson and the prosecution merely involved the prosecution's dismissal of two charges in exchange for Thompson's guilty plea to committing the other two offenses charged. It did not encompass an agree-

---

**2.** 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

**3.** *Id.* at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 355.

**4.** *Id.* at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 356 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216, 217–18 (1925)): "It is settled by decisions of this Court so well known that their citation may be dispensed with, that any statute which … makes more burdensome the punishment for a crime, after

its commission … is prohibited as *ex post facto.*"

**5.** 450 U.S. 24, 33–36, 101 S.Ct. 960, 966–68, 67 L.Ed.2d 17, 25–28 (1981); *see also Lindsey v. Washington*, 301 U.S. 397, 400–01, 57 S.Ct. 797, 798–99, 81 L.Ed. 1182, 1185–86 (1937).

**6.** 650 F.2d 774, 776 (5th Cir.1981) (per curiam). *Cf. Heirens v. Mizell*, 729 F.2d 449, 457–74 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984).

ment with respect to the *sentence* to be imposed. We do not, therefore, venture an opinion with respect to whether Thompson's guilty plea would have constituted a "waiver" of any subsequent constitutional challenges to the sentence imposed had both the length and terms of that sentence been part of the plea bargain.

■ By pleading guilty, Thompson has not forfeited his right to raise this issue, for the "constitutional waiver" doctrine established in the *Brady* trilogy [7] and subsequent Supreme Court cases [8] is not applicable. Thompson is not challenging the validity of his guilty plea or the conviction entered pursuant to that plea. He does not contend that the plea was tainted by an antecedent constitutional violation, such as a coerced confession or an illegal search or seizure,[9] nor does he contest the constitutionality of the state's efforts to prosecute and convict him of the crimes charged.[10] His challenge simply concerns the constitutionality of the sentence imposed pursuant to a validly entered plea.[11] The resolution of Thompson's claim hinges on a question of fact, a question that, in this case, cannot be resolved by merely looking to the guilty plea itself. The law that must be applied is clear. It is the district court's task to discover the facts to which the law must then be applied.

■ An evidentiary hearing on Thompson's contentions is, therefore, necessary. If the district court finds that, after September 7, 1979, Thompson committed any

act that would make him guilty of the offense charged, the sentence imposed is constitutional. If, however, the court finds, as Thompson contends, that the offense was committed only by acts that took place before September 7, it must find the sentence ex post facto punishment and grant Thompson habeas relief, conditioned on his being resentenced.

## II.

Thompson also argues that, insofar as the sentence for incest forbids parole, it violates section 14:78 of the Louisiana Revised Statutes, the incest provision, because that statute does not mention denial of parole and other mitigating terms. The written sentence apparently denies him such mitigation, although the sentencing court's minutes mention the no-parole provision only in connection with the crime-against-nature sentence. If the incest sentence does prohibit parole, it is clearly illegal because the statute does not provide for that penalty.[12] Thompson, however, has not sought state-court relief on this claim, perhaps because, he contends, he first learned that his sentence for the crime of incest was to be served without possibility of parole when he received the state exhibits to prepare his appellate brief.

If the no-parole provision of Thompson's crime-against-nature sentence is upheld, then a similar provision in his incest sentence would be of no practical effect be-

---

7. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1474, 25 L.Ed.2d 785 (1970).

8. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam); *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983).

9. *See, e.g., McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Campbell v. Marshall,* 769

F.2d 314 (6th Cir.1985); *United States v. Davila,* 698 F.2d 715, 719, *reh'g denied,* 703 F.2d 557 (5th Cir.1983).

10. *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

11. *Cf. Barnett v. Hopper,* 548 F.2d 550, 552 (5th Cir.1977).

12. La.Rev.Stat.Ann. § 14:78 (West 1974) provides, in pertinent part:

Whoever commits incest, where the crime is between an ascendant and descendant, or between mother and sister, shall be imprisoned at hard labor for not more than fifteen years.

cause the crime-against-nature sentence is to be served after the incest sentence. If the no-parole provision of the crime-against-nature sentence is vacated, however, a similar provision in Thompson's incest sentence would bar his eligibility for parole for about eighteen months.

While Thompson argues persuasively that he should receive federal relief from the no-parole provision of his incest sentence even though he has not exhausted state remedies relative to it, there is no reason to believe that the state courts will not grant him such relief if the sentence is interpreted to impose that provision and if he requests it. Thompson was sentenced on April 30, 1980, and he would not be eligible for parole until he has served a third of his total twenty-year sentence.[13] Thus, he has more than a year in which to seek relief from the state courts on his incest sentence. If his ex post facto contention is granted and if state courts deny him relief on his contention, he may return to the federal courts for such relief, if any, as may then be appropriate.

### III.

Thompson also argues that the trial judge erred in not granting his motion for appointment of a sanity commission and a hearing on his mental competence and that his guilty plea was involuntary because he lacked the mental capacity to enter it.

Thompson had presented a motion for a sanity commission alleging that "at periods he had visions and delusions which he did not understand" and that a devil had sat on his shoulder during the years in which he had committed the acts. In an oral statement given to police and recorded on October 16, 1979, he stated that one night he had come home drunk and had shot holes in the front door, attempting to dissuade his wife from leaving. He also said that his wife's uncle had struck him on the head with a pistol, suggesting that his alleged psychiatric problems may have resulted from this blow. He also stated that he wanted to get psychiatric help and take some mental tests.

"Due process prohibits the conviction of an accused who lacks mental competence to stand trial."[14] As we stated in *Carroll v. Beto*, "[t]his constitutional right cannot be waived by the incompetent—by guilty plea or otherwise—and thus must be protected by adequate state procedures."[15]

The procedural due process issue, whether Thompson should have been granted a sanity hearing, is distinct from his claim that he was incompetent to enter a knowing and voluntary guilty plea.[16] With respect to his competency hearing claim, Thompson has not met the burden necessary to provoke such an evidentiary hearing. He has not pointed to any facts presented before the trial court that should have raised a bona fide doubt as to his mental competency.[17] His claim then and now rests upon his own unverified statements. As we noted in *Reese v. Wainwright*,[18] a trial court's decision whether to grant a competency hearing should be rendered after a careful consideration of (1) any history of irrational behavior; (2) defendant's bearing and demeanor in court; and (3) prior medical opinions. Thompson did not and does not allege any history of psychiatric treatment or institutionalization. He completed his high school edu-

---

13. *See* La.Rev.Stat.Ann. § 15:574.4(A) (West Supp.1985).

14. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *see also Holmes v. King*, 709 F.2d 965, 966–67 (5th Cir.), *cert. denied*, 464 U.S. 984, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983); *Van Poyck v. Wainwright*, 595 F.2d 1083, 1084–85 (5th Cir.1979).

15. 421 F.2d 1065 (5th Cir.1970), *cert. denied*, 405 U.S. 1030, 92 S.Ct. 1299, 31 L.Ed.2d 488 (1972).

16. *Holmes v. King*, 709 F.2d 965, 967 (5th Cir.), *cert. denied*, 464 U.S. 984, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983).

17. *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2658, 86 L.Ed.2d 274 (1985).

18. 600 F.2d 1085, 1091 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979).

cation when he was in the Navy. He was apparently lucid and fully responsive to the judge's questioning when he pleaded guilty. His oral statements indicate that he was lucid and rational. Mere allegations of abnormal or unusual behavior do not suffice to meet the evidentiary burden required to provoke a competency hearing.[19] Thompson has not presented more. Therefore, we do not find that the trial judge committed reversible error in refusing to grant Thompson's request for a sanity commission.

■■■ Nor does the record contain evidentiary material sufficient to warrant a hearing on Thompson's contention that he was not mentally competent to enter a knowing and voluntary plea. As we stated in *Johnson v. Estelle,* "[t]he burden imposed upon a habeas petitioner to demonstrate incompetency in fact at the time of trial is extremely heavy."[20] Unless the facts "positively, unequivocally and clearly" generate a "real, substantial and legitimate doubt as to the mental capacity"[21] of the defendant to knowingly plead, a court will not find the defendant entitled to habeas relief. Again, no such showing was made. Despite his allegations, Thompson has proffered no evidence that he was not fully competent to enter the plea. Therefore, we find that Thompson was mentally competent to enter a knowing and voluntary plea.

## IV.

■■■ Finally, Thompson contends that the lawyer who represented him in state court was ineffective because he did not demand trial based on Thompson's previously entered pleas of not guilty and not guilty by reason of insanity. The record, however, does not show that any counsel ever entered a plea of not guilty by reason

of insanity. There is no evidence that Thompson would have been able to support a plea of insanity. It does not appear that he had any other defense to the four crimes with which he was charged. He had already fully confessed to them in his statements to the police officers in which he admitted having sexual relations every few days with his daughter for a period of about three years, commencing before her thirteenth birthday, and he does not propose that those confessions would have been inadmissible. Thompson may indeed have been well advised to limit his exposure to a maximum of thirty rather than sixty years, with the hope of leniency.

In *Strickland v. Washington,*[22] the Supreme Court imposed a dual burden on one alleging ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

We cannot say that counsel's performance in negotiating the plea bargain was deficient. On the whole it was favorable to Thompson and it appears unlikely that any plausible defense would have been presented had he gone to trial.

---

**19.** *See id.* at 1093; *Johnson v. Estelle,* 704 F.2d 232, 238–39 (5th Cir.), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984).

**20.** 704 F.2d 232, 238 (5th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984).

**21.** *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973); *Johnson v. Estelle,* 704 F.2d 232, 238 (5th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984).

**22.** 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *see also Green v. McGougan,* 744 F.2d 1189, 1191 (5th Cir.1984).

For these reasons we AFFIRM the denial of relief on all grounds save the contention that the statute, as applied to Thompson, exacts punishment ex post facto. We REMAND for an evidentiary hearing on that issue.