David Earl WILSON,
Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary at Angola, Louisiana, Respondent-Appellee.

No. 86–3537.

United States Court of Appeals,
Fifth Circuit.

March 24, 1987.

See also, 106 S.Ct. 585.

James Lloyd Volling, Faegre & Benson, Minneapolis, Minn., William P. Quigley, New Orleans, La., for petitioner-appellant.

William R. Campbell, Jr., New Orleans, La., for respondent-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The petitioner was convicted of first-degree murder in a Louisiana court and sentenced to death. He appeals the district court's denial, without a hearing, of his petition for a writ of habeas corpus, and presents the same claims for relief argued in the district court and in state courts. We hold that the district court should have held an evidentiary hearing on the issue of ineffectiveness of counsel at the sentencing phase of the trial because the petitioner alleges, proffering evidentiary support, that his trial lawyer failed to investigate and present the defense that, at the time of the victim's death, the petitioner suffered from a mental defect impairing his ability to appreciate the criminality of his conduct or conform to the requirements of law, a mitigating circumstance under Louisiana law. In all other respects, we affirm the opinion of the district court.

## I.

According to the testimony offered by the prosecution, in the early morning hours of October 17, 1983, David Earl Wilson was traveling west on Interstate 10 with two companions, Larry Benjamin and Larry Taylor. The car in which they were traveling ran out of gas near Slidell, Louisiana. Wilson told his companions that he would get some gas. Benjamin responded that he hoped Wilson would not "do anything drastic," and Wilson replied, "I [don't] give a ___ about killing the ___." Wilson then got out of the back door of the car carrying a sawed-off shotgun and hid in tall grass several feet from the shoulder of the road. Soon thereafter, Stephen Stinson, a passing motorist, stopped his car to offer assistance. Taylor spoke with Stinson, who agreed to take him to a gas station. As Taylor opened the passenger door of Stinson's car, Wilson emerged from his hiding place, pushed Taylor away, shoved the shotgun into Stinson's face, and fired point blank. Stinson's car, which had been in gear, lurched forward about 200 feet and

hit a tree. Taylor and Benjamin ran from the scene. Passing truck drivers spotted Stinson's car and alerted the police, who found Wilson, Taylor, and Benjamin in the area.

At the trial, Wilson was represented by court-appointed counsel, John R. Simmons. Benjamin testified against him and other evidence corroborated Benjamin's testimony: The police had found blood on Wilson's garments and shotgun shells in his pocket. Wilson took the stand and testified that he had been asleep in Taylor's car during the incident, awakening only to the sight of police units, and that upon awakening he had walked away from the scene. Wilson's testimony contradicted that of prosecution witnesses on almost every material point, and contradictions in his own testimony brought out on cross-examination undermined his credibility. He was convicted of first degree murder and sentenced to death in the Twenty-Second Judicial District Court for St. Tammany Parish. The Louisiana Supreme Court affirmed the conviction and sentence,[1] and the United States Supreme Court denied certiorari.[2]

Wilson first sought collateral relief in the state trial court, which denied his petition without an evidentiary hearing. On the following day, the Louisiana Supreme Court denied a writ of habeas corpus and stay of execution. Wilson then turned to federal court. His federal habeas corpus petition raised the same claims that he had raised in state court. The district court concluded that an evidentiary hearing was not required, and denied the petition. The district court, however, stayed its order pending Wilson's appeal to this court.

Wilson asserts numerous grounds for relief, including arguments that: (1) counsel was ineffective, violating his sixth amendment rights, at both the guilt and sentenc-

ing phases of his trial; (2) imposition of the death penalty was based on an aggravating circumstance that duplicates an element of the crime itself, violating the eighth amendment and the doctrine of *Collins v. Lockhart;*[3] (3) the death penalty was discriminatorily imposed on him, as argued in *McCleskey v. Kemp*[4] and *Hitchcock v. Wainwright,*[5] because the victim was white and Wilson is black; (4) all but one of the prospective black jurors were removed from the venire before the completion of jury selection, thus discriminating against him because of his race; (5) two prospective jurors were removed for cause, under *Witherspoon v. Illinois,*[6] even though they had not expressed sufficient reservations against the death penalty; and (6) the prosecutor made improper and prejudicial statements that rendered the trial fundamentally unfair, violating Wilson's right to due process.

## II.

### A.

In his claim of ineffective assistance of counsel, Wilson contends that his lawyer did not adequately investigate his background and formulate an appropriate defense based on Wilson's mental incapacity. In support of this claim, Wilson alleges comprehensive and detailed facts about his poverty-stricken childhood and deficient mental capacity. He had suffered a series of convulsions, possibly causing him organic brain damage, had an I.Q. of 66, and, because of his parent's poverty, often went without medical treatment. He finally left school in the ninth grade without having learned to read or write, soon becoming a regular client of the juvenile justice system as a result of thefts and aggressive acts toward others. When it became apparent

---

1. *State v. Wilson,* 467 So.2d 503 (La.1985).

2. *Wilson v. Louisiana,* — U.S. —, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985).

3. 754 F.2d 258 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

4. 753 F.2d 877 (11th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1331, 92 L.Ed.2d 737 (1986).

5. 745 F.2d 1332 (11th Cir.1984), *cert. granted,* — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 976 (1986).

6. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

that his parents would not cooperate with the disciplinary measures taken by the parole authorities, Wilson was placed in a foster home for boys, from which he repeatedly ran away, supporting himself through theft and burglary. A psychiatric report written when he was seventeen diagnosed him as suffering from paranoid schizophrenia. Two months after his eighteenth birthday, Wilson was convicted of theft and sentenced to jail. Several times thereafter he was convicted of burglary and robbery. Members of his family severed their relationship with him, increasing his sense of isolation and rejection.

In October 1983, when Wilson was on parole in California for second-degree burglary, he traveled to Alabama to seek reconciliation with his parents. He was returning from this visit when the murder occurred.

According to the affidavit of John R. Simmons, Wilson's appointed trial counsel, filed in support of Wilson's petition for habeas corpus, Simmons talked with Wilson's parents when he was preparing for the trial. He learned from Wilson's father that Wilson "had problems" dating from his childhood. Furthermore, his observations of Wilson at the trial allegedly gave him additional reason to investigate Wilson's mental history. According to the affidavit, Wilson's personality changed suddenly during the trial, and he acted like "an entirely different person," when he took the stand. However, at no point did Simmons investigate the history of Wilson's mental problems; determine the existence of relevant psychological, psychiatric, or probation records; or attempt to consult with, or have Wilson examined by, a competent psychiatrist or psychologist.

With his habeas petition, Wilson also presented the affidavit of a clinical psychologist, Marc L. Zimmerman. Based on a review of presently available medical, psychological, and psychiatric records, and a personal interview with Wilson, Zimmerman found that Wilson is mentally retarded and suffers from a psychosis with an organic as well as a psychological basis. Zimmerman gave his professional opinion that Wilson's condition is a mental disease or mental defect that "impaired" his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law—a mitigating circumstance under Louisiana Code of Criminal Procedure Art. 905.5. Zimmerman stated that, due to Wilson's long history of mental disorder, he was likely suffering from this condition both at the time of the murder and at the time of his trial in state court. Zimmerman also concluded, therefore, that Wilson's condition "impaired" his competence to stand trial. Zimmerman stated that a more specific diagnosis of Wilson's disorder would require further testing and examination.

█  Based on these allegations and the supporting affidavits, Wilson contends that he should be granted an evidentiary hearing on his claim that counsel was ineffective in failing to investigate and present the defense of insanity at the guilt phase of the trial. We pretermit the issue of counsel's allegedly deficient performance, for Wilson has failed to show an indispensable element of a claim of ineffectiveness of counsel: resulting prejudice.[7] The Supreme Court opinion in *Strickland v. Washington*[8] requires the petitioner to establish a reasonable probability that, but for counsel's ineffectiveness, the outcome of the trial would have been different.[9] In order to receive an evidentiary hearing, the petitioner must allege sufficient facts to show the reasonable probability of a different outcome.[10]

---

7. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674 (1984).

8. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

9. *Id.* at 694, 104 S.Ct. at 2068.

10. *See Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *Johnson v.*

*Estelle*, 704 F.2d 232, 239 (5th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 237 (1984); *Martin v. Texas*, 694 F.2d 423, 425 (5th Cir.1982); *Guice v. Fortenberry*, 661 F.2d 496, 503 (5th Cir.1981).

■ Even if Wilson should be able to prove all of his allegations, they fail to show that, had he been properly represented, he would have had a valid insanity defense. Louisiana law requires, for this defense, that the offender be *"incapable* of distinguishing between right and wrong with reference to the conduct in question." [11] Assuming the truth of the conclusions in Dr. Zimmerman's affidavit, as well as its accuracy in summarizing and interpreting the documentary evidence relied on by Wilson, the evidence is insufficient to show that Wilson could not distinguish between right and wrong, and is therefore insufficient to demonstrate a reasonable probability that, had it been adduced at trial, the verdict of the jury concerning Wilson's guilt would have been different. We therefore affirm the district court's denial of Wilson's request for an evidentiary hearing on the claim that counsel should have presented an insanity defense.

■ Wilson also argues that his counsel should have raised the issue of incompetence to stand trial. The standard for determining whether a defendant was so incompetent to stand trial that the trial denied him his constitutional right to due process [12] differs from the Louisiana law on the defense of insanity at the time of the crime. The Fifth Circuit set forth the criterion for determining the degree of incompetence required to vitiate a state conviction in *Bruce v. Estelle,*[13] which quoted the standard for determining competence in federal trials announced in *Dusky v. Unit-* *ed States.*[14] That test is whether the defendant had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he had a rational as well as factual understanding of the proceedings against him.[15]

■ In *Bruce v. Estelle,* we stated that proof of incompetence to stand trial requires facts that "positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial." [16] Zimmerman's affidavit is insufficient to meet this standard. It merely states that, based on Wilson's presently available records, as well as their personal interview, Wilson's mental condition *"impaired* his competence to stand trial." This conclusion and the evidence on which it is based, taken together, do not even assert that Wilson was incapable of meaningful participation in his trial.[17] Therefore, we also affirm the denial of an evidentiary hearing on the claim that counsel should have raised the issue of incompetence.

■ Wilson alleges that counsel was ineffective in other respects at the guilt phase of the trial. One claim is that his counsel's closing argument gave the jury no basis upon which it could return any verdict other than guilty of first degree murder. Wilson points in particular to counsel's statement, "I feel that [Wilson] was guilty of first degree murder because

11. La.Rev.Stat.Ann. § 14:14 (West 1986); *see also State v. Brogdon,* 426 So.2d 158, 168 (La. 1983), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); *State v. Roy,* 395 So.2d 664, 665–66 (La.1981).

12. *See Pate v. Robinson,* 383 U.S. 375, 378, 386, 86 S.Ct. 836, 838, 842, 15 L.Ed.2d 815 (1966); *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), *vacating* 223 F.2d 582 (D.C.Cir.1955); *Holmes v. King,* 709 F.2d 965, 966 (5th Cir.), *cert. denied,* 464 U.S. 984, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983); *Davis v. Alabama,* 545 F.2d 460, 463 (5th Cir.), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *Bruce v. Estelle,* 483 F.2d 1031, 1036 (5th Cir.1973), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

13. 483 F.2d 1031, 1036–37 (5th Cir.1973), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

14. 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

15. *Id.* at 402, 80 S.Ct. at 789; *see also Bruce v. Estelle,* 483 F.2d at 1041–42; *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir.1976).

16. 483 F.2d at 1043. *See also Thompson v. Blackburn,* 776 F.2d 118, 124 (5th Cir.1985); *Johnson v. Estelle,* 704 F.2d at 238; *Davis v. Alabama,* 545 F.2d at 465; *McCune v. Estelle,* 534 F.2d at 612.

17. *Cf. McCune v. Estelle,* 534 F.2d at 612.

I think there were three acting participants there and I think every one of them should suffer the same way." However, taken in context, this statement was part of counsel's obvious strategy to avert a verdict of guilty of first-degree murder. The evidence concerning Wilson's complicity was overwhelming. The victim had been a candidate for public office in St. Tammany Parish, Louisiana, at the time of his death and had been killed, while acting as a good Samaritan, by one of the party that he was trying to assist. Simmons obviously thought that to profess Wilson's complete innocence would alienate the jury. He instead sought to suggest that there was a reasonable doubt whether Wilson was the triggerman. He argued at length that the jury should not credit the testimony implicating Wilson as the gunman, that the other participants were equally guilty, that they acted together in a conspiracy, and that the evidence did not show Wilson to have played a larger role than the others. Simmons also showed that one of the other participants in the murder had made a plea bargain, a part of which included testifying against Wilson.

The Supreme Court counseled in *Strickland v. Washington* that "[j]udicial scrutiny of counsel's performance must be highly deferential,"[18] and directed courts to indulge a strong presumption in favor of reasonable performance, which must be overcome by the challenger.[19] We find that Wilson's counsel presented his closing argument in the exercise of reasonable professional judgment, and was therefore not ineffective.

■ Wilson's final allegations of ineffective assistance at the guilt phase of his trial are that his counsel failed to request appropriate admonitions to the jury and failed to move for mistrials in numerous situations in which the circumstances clearly required such action. However, Wilson points to no basis in the record for these sweeping allegations, and fails to proffer any additional evidence to support them. As this court has consistently stated, speculative and unspecific charges in a habeas petition do not warrant an evidentiary hearing.[20]

## B.

■ Based on the same allegations and affidavits about his mental history and present mental condition that we have reviewed, Wilson also requests an evidentiary hearing on the issue of ineffective assistance of counsel at the penalty phase of his trial, contending that his counsel failed to present evidence of mental impairment as a mitigating factor.

Wilson has not alleged that his own behavior before the trial gave Simmons, his lawyer, any indication that mental impairment was a promising line of defense. The alleged conversation between counsel and Wilson's father, however, might have been sufficient to alert competent counsel to such a defense. The district court did not address the question whether Simmons knew of the tenability of this defense. Based on the alleged facts, we find that Simmons at least had reason to ask Wilson's parents further questions about his problems in childhood or to communicate with the foster home or any other institution known to have relevant records. Moreover, if this investigation would have revealed what Wilson now alleges, Simmons would have had reason to consult with, or have Wilson examined by, a competent psychiatrist or psychologist.

The Supreme Court has held, in *Strickland v. Washington,* that counsel may make a strategic decision against pursuing a particular defense after less than complete investigation only to the extent that reasonable professional judgment supports

18. 466 U.S. at 689, 104 S.Ct. at 2065.

19. *Id.* at 689–90, 104 S.Ct. at 2065–66.

20. *Celestine v. Blackburn,* 750 F.2d 353, 358 (5th Cir.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985); *Knighton v. Mag-* gio, 740 F.2d 1344, 1349 (5th Cir.), *cert. denied,* 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 241 (1984); *Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982).

the limitations on investigation.[21] Wilson argues that Simmons' failure to investigate was not based on such a reasonable strategic decision. Simmons' affidavit does not assert that he thought about the possibility of an investigation or made a strategic decision, and neither the state's brief nor the district court opinion suggests any factual support for that thesis.

Even if Simmons did make a considered decision to pursue mitigating factors other than mental impairment, that decision must have been reasonable. In previous cases with facts similar to Wilson's allegations, this court has held counsel's decision not to investigate to have been unreasonable. For example, in *Jones v. Thigpen,*[22] we held that counsel's failure to present evidence of mental retardation and emotional disturbance constitutes ineffective assistance because it was both professionally unreasonable and prejudicial. In an earlier decision, *Washington v. Strickland,*[23] we referred approvingly to a California case in which a similar strategic choice was unreasonable:

In [the California case of *In re Saunders,* 2 Cal.3d 1033, 88 Cal.Rptr. 633, 472 P.2d 921 (1970)], the defendant participated in an armed robbery which resulted in the murder of a store clerk. He was tried for capital murder and counsel was appointed to defend him. Two months before trial the defendant and his mother informed counsel that the defendant had previously suffered head injuries that resulted in organic brain damage. Although the attorney was aware that this information was relevant to the diminished capacity defense under California law, he never investigated the mat-

ter. Instead, he relied exclusively upon an argument that defendant did not actually commit the shooting.

The attorney later testified that he failed to investigate the diminished capacity line of defense before trial because he had made a strategic choice to preserve that argument for the clemency hearing. The California Supreme Court overturned the conviction. It found that a reasonable attorney would have recognized that diminished capacity was a very promising line of investigation in light of the information furnished to counsel by defendant and his mother. It also found that a reasonable attorney would not have made the strategic choice to rely upon the weak defense used to the exclusion of the diminished capacity defense.[24]

Because no evidentiary hearing was held in state court, the state-court record does not contain sufficient evidence from which the district court could determine whether Simmons made a considered strategic decision or whether this decision was reasonable. We therefore turn to the question of prejudice to determine whether an evidentiary hearing is required.[25]

Louisiana law provides that a mental disease or defect impairing the capacity of the offender, at the time of the offense, to "appreciate the criminality of his conduct or to conform his conduct to the requirements of law" is a mitigating circumstance.[26] The Louisiana death sentencing statute requires the jury to consider evidence of mitigating circumstances before imposing the death penalty.[27] If Dr. Zimmerman testifies in accordance with his affidavit, his opinion would support a finding of the statutory mitigating circum-

**21.** 466 U.S. at 691, 104 S.Ct. at 2066.

**22.** 788 F.2d 1101 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1292, 94 L.Ed.2d 148 (1987).

**23.** 693 F.2d 1243 (5th Cir.1982), *rev'd on other grounds,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**24.** *Id.* at 1256.

**25.** *See Baldwin v. Maggio,* 704 F.2d 1325, 1328–29 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984).

**26.** La.Code Crim.Proc.Ann. art. 905.5 (West 1986).

**27.** *See* La.Code Crim.Proc.Ann. art. 905.3 (West 1986); *State v. Jones,* 474 So.2d 919, 932 (La. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2906, 90 L.Ed.2d 993 (1986); *State v. Welcome,* 458 So.2d 1235, 1246 (La.1983), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152 (1985).

stance of mental impairment. Because the murder was accompanied by only one statutory aggravating circumstance—murder during the commission of an armed robbery—we find that, if the mitigating circumstance of mental impairment had been established, the district court might conclude that the degree of likelihood that a jury would not have recommended a death sentence is sufficient to undermine its confidence in the outcome of this phase of the trial.[28]

We reject the state's argument that the testimony of Wilson's father about his mental history obviated any prejudice resulting from the absence of other testimony about Wilson's mental condition. Wilson's father merely testified that Wilson was "kind of mentally ill," and that, when young, he had "some kind of fever messing with his brain." This inexpert observation by an an immediate relative is not equivalent to a documented history of severe mental difficulties and testimony from an expert witness.[29] We therefore find that Wilson's alleged evidence makes a sufficient showing of prejudice to warrant an evidentiary hearing on this issue as well as the issue of counsel's deficient performance.

### III.

Wilson contends that the only aggravating circumstance upon which his death sentence is premised duplicates an essential element of the crime of first degree murder in Louisiana, in violation of the eighth amendment and the doctrine of an Eighth Circuit decision, *Collins v. Lockhart*.[30] At the sentencing phase of Wilson's trial, the jury found three aggravating circumstanc-

es to support its death penalty verdict: (1) murder during the perpetration of an armed robbery; (2) a significant prior history of criminal activity; and (3) commission of the offense in an especially heinous, atrocious, or cruel manner. On direct appeal, the Louisiana Supreme Court held that the aggravating circumstance of prior criminal history was constitutionally invalid, and that the finding that the offense was committed in an especially cruel, heinous, and atrocious manner was not supported by the evidence. Consequently, the only remaining statutory aggravating circumstance is murder during the commission of an armed robbery, an essential element of the crime of first-degree murder under Louisiana law.

In *Welcome v. Blackburn*,[31] this court rejected the argument that premising the death penalty upon an aggravating circumstance that duplicates an element of the crime violates the eighth amendment. We therefore affirm the district court's denial of this claim.

### IV.

Wilson also argues that his death sentence must be set aside because two of the three aggravating circumstances found by the jury were reversed on appeal, making it impossible to ascertain how the jury would have weighed the remaining aggravating and mitigating circumstances. Wilson urges the inapplicability of *Zant v. Stephens*,[32] which upheld the validity in this situation of death sentences under the Georgia statutory sentencing scheme.

In *Williams v. Maggio*,[33] decided while *Zant* was pending before the Su-

---

**28.** *Compare Jones v. Thigpen*, 788 F.2d at 1103 with *Glass v. Blackburn*, 791 F.2d 1165, 1170–71 (5th Cir.), *stay granted*, — U.S. —, 107 S.Ct. 29, 92 L.Ed.2d 779 (1986); *Celestine v. Blackburn*, 750 F.2d at 357–58; *Willie v. Maggio*, 737 F.2d 1372, 1394 (5th Cir.1984).

**29.** *Compare with Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985), *cert. dismissed*, — U.S. —, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986); *Willie v. Maggio*, 737 F.2d at 1394.

**30.** 754 F.2d 258 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

**31.** 793 F.2d 672, 676–77 (5th Cir.), *stay granted*, — U.S. —, 107 S.Ct. 37, 92 L.Ed.2d 789 (1986). *See also Wingo v. Blackburn*, 783 F.2d 1046, 1051 (5th Cir.), *stay granted*, — U.S. —, 107 S.Ct. 9, 92 L.Ed.2d 765 (1986).

**32.** 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

**33.** 679 F.2d 381 (5th Cir.1982) (en banc) (dissented from by Randall, J., joined by Rubin, Politz, and Williams, JJ.), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983).

preme Court, the Fifth Circuit held that subsequent invalidation of two out of three aggravating circumstances does not undermine a jury's imposition of the death penalty. The court reasoned, as did the Supreme Court later in *Zant,* that, once one aggravating circumstance has been found, the weight assigned by the jurors to the petitioner's actions is not materially affected by how state law classifies these actions.[34] Our reasoning in *Williams* rejects Wilson's analysis of the Louisiana death sentencing statute. Wilson contends that the wording of this statute specifically requires the jury to weigh statutory aggravating and mitigating circumstances in such a way that predicting the jury's decision based on fewer aggravating circumstances is impossible. Not only does *Williams* hold that the invalidation of an aggravating circumstance has no material effect on the jury's considerations, but an independent review of the Louisiana sentencing statute,[35] as well as Louisiana case law,[36] reveals that Louisiana law does not require weighing of aggravating against mitigating circumstances as Wilson suggests.

▇▇ The trial court instructed the jury to "consider the existence of aggravating and mitigating circumstances in deciding which sentence should be imposed." It further charged:

> Even if you find the existence of an alleged aggravating circumstance, you must also consider any mitigating circumstances before you decide that a sentence of death should be imposed....

... You are not limited only to those mitigating circumstances which are defined. You may consider any other relevant circumstances which you feel should mitigate the severity of the penalty to be imposed.

Wilson contends that this charge improperly failed to instruct the jury about its duty to weigh aggravating against mitigating factors, and therefore that the jury's sentencing determination was speculative and capricious in violation of Wilson's right to due process. The district court, however, correctly concluded that the trial court's instruction was appropriate and complied with La.Code Crim.Proc. art. 905.3, the Louisiana death sentencing statute.[37] The Louisiana Supreme Court has consistently approved similar jury instructions.[38] In any event, the Supreme Court held in *Zant* that the Constitution does not require a state to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances.[39] This instruction, therefore, did not deny Wilson due process.

## V.

▇▇ Wilson argues that the death sentence as administered in Louisiana is invidiously discriminatory against blacks who murder whites. This court's decisions, however, as summarized in *Moore v. Blackburn,*[40] have held that statistical studies like those proffered by Wilson are insufficient to show that a petitioner has been the victim of discrimination.

---

**34.** *Id.* at 389; *Zant,* 462 U.S. at 873, 888–89, 103 S.Ct. at 2740, 2749.

**35.** La.Code Crim.Proc.Ann. art. 905.3 (West 1986) provides:

> A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists and, after *consideration* of any mitigating circumstances, recommends that the sentence of death be imposed. (Emphasis added.)

**36.** *See, e.g., State v. Jones,* 474 So.2d 919, 932 (La.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2906, 90 L.Ed.2d 993 (1986); *State v. Welcome,* 458 So.2d 1235, 1246–47 (La.1983), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 152

(1985); *Sawyer v. State,* 442 So.2d 1136, 1138–39 (La.1983), *cert. denied,* 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984).

**37.** *See* note 35 *supra.*

**38.** *See, e.g., State v. Jones,* 474 So.2d at 932; *State v. Welcome,* 458 So.2d at 1246–47; *State v. Flowers,* 441 So.2d 707, 716, (La.1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).

**39.** 462 U.S. at 873–81, 890, 103 S.Ct. at 2741–44, 2750.

**40.** 806 F.2d 560, 564–65 (5th Cir.1986), *stay granted,* —— U.S. ——, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987).

## VI.

Wilson asserts racial discrimination against him in the jury selection process, alleging that, because 38 persons on the jury venire were called to another courtroom for voir dire in another case, all blacks except one were removed from the venire prior to the completion of jury selection. Relying on Supreme Court cases summarized in *Batson v. Kentucky*[41] that describe the showing necessary to establish a prima face case of purposeful discrimination in the selection of a venire,[42] Wilson contends that his showing of an underrepresentation of blacks in his particular case, along with his allegations that the jury selection mechanism provided an opportunity for discrimination, constitutes prima facie proof of discrimination. Wilson makes no other allegation, or proffer of evidence, to show that the trial court divided the venire on the basis of race or with any discriminatory intent. We agree with the district court that the bare allegation that the district court divided the venire fails to demonstrate, as required by cases such as *Alexander v. Louisiana*[43] and *Whitus v. Georgia*,[44] that the jury selection mechanism is subject to abuse. This claim is therefore without merit.

## VII.

Wilson's next habeas claim is that two prospective jurors were erroneously excused for cause because the scruples that they expressed against the death penalty fell short of the clarity required by *Witherspoon v. Illinois*[45] and La.Code Crim.Proc. art. 798(2). However, the district court found that venirewoman Raia made it clear from the beginning that she could not consider the death penalty under any circumstances, and, as indicated by the trial transcript, counsel for the defense simply chose not to attempt rehabilitation. Although venirewoman Riggle initially equivocated under questioning by defense counsel, when subsequently questioned by the court, she unambiguously stated that she could not consider the death penalty. The Supreme Court has stated, in *Wainwright v. Witt*,[46] that the determination whether a prospective juror was properly excluded for cause under *Witherspoon* is a factual question, for which 28 U.S.C. § 2254(d) requires a federal reviewing court to accord the state trial court a "presumption of correctness."[47] We agree with the district court that these prospective jurors were properly excluded for cause.

## VIII.

Wilson urges that the prosecution at his state court trial made several improper and prejudicial statements, both in cross-examining him and in closing arguments, that rendered his trial fundamentally unfair in violation of his right to due process. No objection to these statements was made at trial, a procedural default under Louisiana's contemporaneous objection rule.[48]

41. — U.S. —, 106 S.Ct. 1712, 1721–22, 90 L.Ed.2d 69 (1986).

42. *See Castaneda v. Partida,* 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977); *Washington v. Davis,* 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976); *Alexander v. Louisiana,* 405 U.S. 625, 630–31, 92 S.Ct. 1221, 1225–26, 31 L.Ed.2d 536 (1972); *Whitus v. Georgia,* 385 U.S. 545, 550–52, 87 S.Ct. 643, 646–47, 17 L.Ed.2d 599 (1967);

43. 405 U.S. 625, 630–31, 92 S.Ct. 1221, 1225–26, 31 L.Ed.2d 536 (1972).

44. 385 U.S. 545, 550–52, 87 S.Ct. 643, 646–47, 17 L.Ed.2d 599 (1967).

45. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

46. 469 U.S. 412, 427–30, 105 S.Ct. 844, 854–55, 83 L.Ed.2d 841 (1985).

47. *See also Evans v. McCotter,* 790 F.2d 1232, 1239–40 (5th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 327, 93 L.Ed.2d 300 (1986); *Wicker v. McCotter,* 783 F.2d 487, 493 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Brock v. McCotter,* 781 F.2d 1152, 1156 (5th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986).

48. La.Code Crim.Proc.Ann. art. 841 (West 1986); *Smith v. Maggio,* 696 F.2d 365, 369 (5th Cir.), *cert. denied,* 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 113 (1983); *Tyler v. Phelps,* 643 F.2d 1095, 1100 (5th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982).

Wilson argues that the state courts have waived his procedural default by addressing the claim on the merits.[49] In this case, however, the state courts denied him collateral relief without giving reasons. In *Preston v. Maggio*,[50] this court addressed the question whether a state reviewing court waives a procedural default when it denies relief without offering any reasons for the denial. We held that the considerations in making this determination are: (1) whether the state court has used procedural default in similar cases to preclude review of the claim's merits; (2) whether the history of the case suggests that the state court was aware of the procedural default; and (3) whether the state court's opinion suggests reliance upon procedural grounds or a determination of the merits.[51]

The Louisiana Supreme Court has held on several occasions that, although it would ordinarily bar further review of the prosecutor's conduct on the basis of procedural default, it will not invoke procedural default on this issue in capital cases.[52] Disagreeing with the district court, we conclude that, had the Louisiana Supreme Court issued reasons, it would have waived Wilson's procedural default. Nevertheless, we agree with the ultimate rejection of this claim by the district court, because we find that the prosecutor's remarks were not egregious and were not likely to have so influenced the jury as to deny Wilson a fundamentally fair trial.

■ Wilson first contends that the prosecution's cross-examination of him about what he calls a nonexistent second-degree murder conviction, and subsequent reference in closing argument to a "conviction," seriously confused and influenced the jury. This cross-examination was in response to the direct examination by Wilson's counsel, which had brought out Wilson's prior convictions. While the prosecutor did ask a question about whether Wilson had been convicted of murder, it is patent from the record read in context that he misspoke and was referring to a conviction for second-degree robbery. The reference occurred only once. Wilson further asserts that the prosecutor's reference to prior convictions in closing argument aggravated the jury's confusion. This contention lacks merit because evidence of these convictions had been adduced during Wilson's own testimony.

■ Wilson also contends that the prosecutor's closing argument improperly inflamed the jury and improperly offered counsel's opinion as to Wilson's guilt and lack of credibility. Many of the challenged remarks, however, were properly based on the evidence adduced at trial. Moreover, many of them were in response to arguments of defense counsel.[53] This court has held that a defect of constitutional proportions is not to be found in any but egregious cases,[54] and these comments are no more egregious than comments that we have held in other cases not to constitute a denial of a fundamentally fair trial.[55]

**49.** *See County Court v. Allen*, 442 U.S. 140, 148–54, 99 S.Ct. 2213, 2220–23, 60 L.Ed.2d 777 (1979); *Clark v. Maggio*, 737 F.2d 471, 473 n. 6 (5th Cir.1984), *cert. denied*, 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985); *Price v. King*, 714 F.2d 585, 587 (5th Cir.1983).

**50.** 705 F.2d 113, 115–17 (5th Cir.1983), *cert. denied*, 471 U.S. 1104, 105 S.Ct. 2334, 85 L.Ed.2d 850 (1985).

**51.** *Id.* at 116.

**52.** *State v. Lindsey*, 428 So.2d 420, 423 n. 1 (La.), *cert. denied*, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983); *State v. Berry*, 391 So.2d 406, 416 (La.1980), *cert. denied*, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981); *State v. Sonnier*, 379 So.2d 1336, 1371 (La.1980) (on rehearing), *cert. denied*, 463 U.S. 1229, 103 S.Ct.

3571, 77 L.Ed.2d 1412 (1983); *see also* La.Sup. Ct.R. 28, § 1.

**53.** *See Kirkpatrick v. Blackburn*, 777 F.2d 272, 282–83 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986); *Cook v. Bordenkircher*, 602 F.2d 117, 120–21 (6th Cir.), *cert. denied*, 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979).

**54.** *See Kirkpatrick v. Blackburn*, 777 F.2d at 281; *Whittington v. Estelle*, 704 F.2d 1418, 1421–22 (5th Cir.), *cert. denied*, 464 U.S. 983, 104 S.Ct. 428, 78 L.Ed.2d 361 (1983); *Houston v. Estelle*, 569 F.2d 372, 382–83 (5th Cir.1978).

**55.** *See, e.g., Kirkpatrick v. Blackburn*, 777 F.2d at 282–83; *cf. United States v. Saenz*, 747 F.2d 930, 939–42 (5th Cir.1984), *cert. denied sub nom. Solis v. United States*, 473 U.S. 906, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985).

### IX.

■ Wilson also asserts that: (1) he has been sentenced to death in an arbitrary manner because the jury was allowed to consider two aggravating circumstances that were later determined to be inapplicable; (2) the comparative appellate review of his death sentence was inadequate; (3) his death sentence is excessive and disproportionate; (4) his death sentence is arbitrary and capricious; (5) electrocution is a cruel and unusual means of punishment; and (6) capital punishment is an excessive penalty. We agree with the district court that all of these claims lack merit. We adopt the opinion of the district court on these issues, and reprint the relevant portion of the district court opinion as an appendix.

Wilson's final claim is that the cumulative effect of violations of his rights is in itself a violation of the fifth, sixth, eighth, and fourteenth amendments. This court has found only one possible violation of a constitutional right, and is remanding this case to the district court for an evidentiary hearing on that issue. None of the other allegations of violations of petitioner's constitutional rights has merit. Their total effect did not make the trial unfair and, therefore, a violation of due process, nor can they be aggregated to constitute a violation of the other constitutional provisions recited in the litany.

For the above reasons, we VACATE the district court's finding that Wilson's counsel was not ineffective at the penalty phase of the trial, and GRANT an evidentiary hearing on the issues of deficient performance and prejudice. We AFFIRM the district court's decision in all other respects.

### APPENDIX

Excerpts from opinion of United States District Court, Eastern District of Louisiana, dated July 1, 1986, in Civil Action No. 86–1751, Section "B".

\* \* \* \* \* \*

### VIII. Petitioner has not been sentenced arbitrarily.

Petitioner's eighth claim is that since the jury was allowed to consider two aggravating circumstances which were later determined to be inapplicable, the sentence was arbitrary. The Louisiana Supreme Court has already determined that neither of the two failing aggravating circumstances injected any arbitrary factors into the proceeding or into the jury's decision process. *State v. Wilson*, 467 So.2d at 522–23.

■ This court agrees with the Louisiana Supreme Court that the introduction of evidence otherwise admissible in support of aggravating circumstances later declared invalid did not render the resulting sentence arbitrary and unconstitutional.

### IX. The comparative appellate review of petitioner's sentence was adequate.

■ The purpose of review by the state supreme court is to make sure that the death sentences are being imposed fairly, rationally, and without discrimination throughout the state. *Proffitt v. Florida*, 428 U.S. 242, 260, 96 S.Ct. 2960, 2970, 49 L.Ed.2d 913 (1976). The Louisiana Supreme Court is directed by state law to review capital sentences, and it applies the capital sentencing review procedures "rationally and consistently." La.Code Crim. Proc. art. 905.9; La.Sup.Ct.Rule 28; *Baldwin v. Blackburn*, 524 F.Supp. 332, 341 (W.D.La.), *aff'd.*, 653 F.2d 942 (5th Cir.), *cert. denied*, 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1981).

■ Petitioner's claim that the Louisiana statutory provisions and practices governing appellate review of death sentences denied petitioner constitutional rights is unsupported and without merit.

### X. Petitioner's sentence is not excessive and disproportionate.

■ Petitioner's tenth claim states that "in light of all the relevant factors and mitigating circumstances relating to the offense and the offender," the execution of petitioner would be cruel and unusual punishment. Louisiana law classifies the crime of first-degree murder, in certain instances, as a capital offense. The jury found and the Louisiana Supreme Court upheld at least one statutory aggravating

circumstance, which alone is enough to support the death sentence. The jury considered all the "relevant factors and mitigating circumstances" and recommended the death sentence. It is not this Court's province to overrule the jury's determination that the circumstances warranted the death penalty.

### XI. Petitioner's sentence is not arbitrary and capricious.

Petitioner's eleventh claim is that a comparison of cases in which the death penalty has been imposed with the cases in which it has not been imposed shows that the administration of the death penalty in Louisiana is "wholly arbitrary and capricious."

■ The Louisiana Supreme Court has reviewed petitioner's case and determined that the "death penalty was not obtained through the influence of any arbitrary factors," and that the sentence is not "disproportionate" to others imposed by the Twenty-Second Judicial District. *State v. Wilson*, 467 So.2d at 523–25. The Louisiana Code of Criminal Procedure, in providing proportionality review of sentences, affords full protection under the Constitution. *See Baldwin v. Blackburn*, 524 F.Supp. at 341.

■ This Court agrees with the state supreme court's determination that arbitrary factors did not contribute to the sentencing in this case. Petitioner's claim that petitioner was sentenced in an arbitrary and capricious manner is unfounded and without merit.

### XII. Electrocution is not cruel and unusual means of punishment.

■ The petitioner's twelfth contention is that electrocution, which is Louisiana's method of carrying out a capital sentence, would inflict wanton and unnecessary torture and torment upon petitioner. Electrocution as the method of carrying out a sentence of capital punishment is constitutional. *Spinkellink v. Wainwright*, 578 F.2d 582, 616 (5th Cir.), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). Petitioner's claim is without merit.

\* \* \* \* \* \*

### XIV. Capital punishment is constitutional.

■ Petitioner's fourteenth claim is that capital punishment is an excessive penalty and serves no rational and legitimate social interest which can justify its unique harshness. While this Court recognizes the severity and finality of the death sentence, we will not join in petitioner's crusade to abolish capital punishment. This Court is bound to uphold the Constitution as interpreted by the Supreme Court of the United States. The United States Supreme Court has upheld the validity of capital punishment for the crime of murder, and this Court must follow. *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

EDITH H. JONES, Circuit Judge, concurring.

I concur in the judgment and the vast bulk of this thorough opinion. I write to suggest that our panel does not, in its remand for an evidentiary hearing of the *Strickland* issue concerning Wilson's possible mental impairment, express any opinion on the likely outcome of that matter in the district court. Although *Strickland v. Washington* and our holding in *Jones v. Thigpen* shed some light on the considerations to be weighed by the district court in determining whether petitioner's counsel was deficient in failing to investigate petitioner's mental problems, I believe they are not squarely on point. In any event, the similarity between those cases and the instant one remains to be resolved by the district court in the evidentiary hearing.