Robert Wayne SAWYER

v.

**John WHITLEY, Warden, Louisiana State Penitentiary, Angola, Louisiana.**

Civ. A. No. 90–4035.

United States District Court, E.D. Louisiana.

July 16, 1991.

---

Nicholas J. Trenticosta, New Orleans, La., for petitioner.

Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, La., Annette Viator, Chief Legal Counsel, Dept. of Corrections, Baton Rouge, La., for respondent.

## MEMORANDUM OPINION

MENTZ, District Judge.

This death penalty case is before the Court for review of Robert Sawyer's second petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the interest that the validity of his conviction be finally resolved, the Court permitted Sawyer to amend this second petition three times. The State filed responses to the petition and each amendment. After careful review of the briefs and evidence submitted by the parties, the record, and the applicable law, the Court denies Sawyer's petition for writ of habeas corpus.

**300**

## I.

Robert Sawyer is a state prisoner incarcerated at the Louisiana State Penitentiary for the murder of Frances Arwood. Although the gruesome details of the murder of have been recounted several times [1], the Court does so again for a proper understanding of the ruling herein.

A series of bizarre and frightful events, which led to the death of Fran Arwood, occurred at the residence where defendant [Robert Sawyer] was living with Cynthia Shano and Ms. Shano's two young sons. Ms. Arwood was divorced from Ms. Shano's stepbrother, but remained friendly with her and often helped her by taking care of the children. Defendant had lived with Ms. Shano in Texas for several months and had professed an intention to marry her.

On September 28, 1979, Ms. Arwood was staying with Ms. Shano and helping with the children while Ms. Shano's mother was in the hospital. Defendant and Ms. Shano went out for the evening. Defendant returned at about 7:00 o'clock the next morning with Charles Lane, whom defendant had apparently met in a barroom and had invited to the residence for more drinking and talking.

Defendant and Lane continued their drinking while listening to records. At some time during the morning, Ms. Shano left to check on her hospitalized mother. When she returned, she noticed that Ms. Arwood was bleeding from her mouth. Defendant told Ms. Shano that he had struck Ms. Arwood after an argument in which he accused Ms. Arwood of giving some pills to one of the children.

The reasons behind the events that followed are difficult to discern accurately from the record and more difficult to comprehend. However, defendant does not vigorously contest the fact that Ms. Arwood in his presence was beaten, scalded with boiling water and burned with lighter fluid, or that the ferocity of the attack and the severity of the injuries

caused her to die several weeks later without ever regaining consciousness.

After the original altercation during Ms. Shano's absence, defendant and Lane, for some unexplained reason, decided that Ms. Arwood needed a bath. When she resisted, defendant struck her in the face with his fist, and both men pummeled her with repeated blows. Ms. Shano objected, but defendant locked the front door and retained the key, threatening to harm Ms. Shano if she interfered or ever revealed the incident.

Acting in concert, defendant and Lane dragged Ms. Arwood by the hair to the bathroom, stripped her naked, and literally kicked her into the bathtub, where she was subjected to dunking, scalding with hot water, and additional beatings with their fists. A final effort by Ms. Arwood to resist the sadistic actions of her tormentors resulted in defendant's kicking her in the chest, causing her head to strike either the tub or an adjacent windowsill with such force as to render her unconscious. Although she did not regain consciousness, defendant and Lane continued to use her body as the object of their brutality.

Defendant and Lane dragged her from the bathroom into the living room, where they dropped her, face down, onto the floor. Defendant then beat her with a belt as she lay on the floor while Lane kicked her. They then placed her on her back on a sofa bed in the living room. As Ms. Shano went to the bathroom, she overheard defendant say to Lane that he (defendant) would show Lane "just how cruel he (defendant) could be". When she reentered the living room, she was struck by the pungent smell of burning flesh. She then discovered that defendant had poured lighter fluid on Ms. Arwood's body (particularly on her torso and genital area) and had set the lighter fluid afire.

Then, displaying callous disregard for the helpless (and mortally injured) victim, defendant and Lane continued to lounge

1. *See Sawyer v. Smith,* — U.S. —, 110 S.Ct. 2822, 2825, 111 L.Ed.2d 193 (1990); *Sawyer v. Butler,* 848 F.2d 582, 585 (5th Cir.1988); *Sawyer v. State,* 442 So.2d 1136, 1136–37 (La.1983); *State v. Sawyer,* 422 So.2d 95, 97–98 (La.1982).

about the residence listening to records and discussing the disposition of Ms. Arwood's body. Lane fell asleep next to the beaten and swollen body of the victim.

Shortly after noon, Ms. Shano's sister and nephew came to visit. When the nephew knocked insistently, defendant gave Ms. Shano the key to open the door, and she ran screaming to the safety of her relatives. Her excited ravings ("they've killed Fran and they're trying to kill me") were incomprehensible to her nephew and sister until they looked inside and saw the gruesome scene and Ms. Arwood's beaten and blistered body. They also saw the defendant sitting with his feet propped up on the edge of the couch.

In the meantime, Ms. Shano called for police and emergency units. When the authorities arrived, they took Lane and defendant to jail, and rushed Ms. Arwood to a hospital, where she subsequently died.

*State v. Sawyer,* 422 So.2d at 97–97 (footnotes omitted).

## II.

Sawyer was convicted of first degree murder and sentenced to death on September 19, 1980.[2] He has pursued post-conviction remedies for more than a decade. At all stages, he was represented by counsel.

**2.** Sawyer and Lane were tried separately. Lane also was convicted of first degree murder, but he received a life sentence without benefit of parole, probation, or suspension of sentence. *See State v. Lane,* 414 So.2d 1223 ((La.1982) (affirming Lane's conviction).

**3.** The United States Supreme Court remanded for consideration of whether the invalidity of an aggravating circumstance in sentencing impaired the death sentence.

**4.** On appeal, Sawyer raised only three challenges to his confinement and sentence: 1) whether he was denied effective assistance of counsel; 2) whether he was denied due process because the trial court failed to comply with a state law requiring that counsel assigned in a capital case must have been admitted to the bar at least five years; and 3) whether prosecutorial misconduct erroneously misled the jury as to their role in the death penalty determination.

The Louisiana Supreme Court affirmed his conviction and sentence on direct appeal. *State v. Sawyer,* 422 So.2d 95 (La. 1982). The United States Supreme Court vacated and remanded the case to the Louisiana Supreme Court for consideration of an issue unrelated to the present petition.[3] *Sawyer v. Louisiana,* 463 U.S. 1223, 103 S.Ct. 3567, 77 L.Ed.2d 1407 (1983). On remand, the court again affirmed the conviction and sentence. *State v. Sawyer,* 442 So.2d 1136 (La.1983). Thereafter, Sawyer filed a state application for habeas corpus relief. After an evidentiary hearing, the state trial court denied relief. Next, Sawyer sought a writ of habeas of corpus in the Louisiana Supreme Court, which summarily denied his application. *Sawyer v. Maggio,* 479 So.2d 360 (La.1985).

Sawyer filed his first petition for federal habeas corpus relief in this court on January 20, 1986. Sawyer's petition raised 18 claims for relief, all of which the Court addressed on the merits and denied. On appeal, the Fifth Circuit affirmed the denial. *Sawyer v. Butler,* 848 F.2d 582 (5th Cir.1988).[4] On rehearing *en banc,* the Fifth Circuit affirmed the panel's opinion. *Sawyer v. Butler,* 881 F.2d 1273 (5th Cir. 1989). On June 21, 1990, the United States Supreme Court affirmed the judgment of the Fifth Circuit. *Sawyer v. Smith,* —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).[5]

Sawyer filed his second state petition for habeas corpus relief on October 3, 1990.

In addition, Sawyer challenged the district court's application of a prejudice requirement on the claim of prosecutorial misconduct.

**5.** The Supreme Court considered only the question of whether a prisoner whose murder conviction became final before the decision in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which prohibits the imposition of death sentence where the prosecutor's closing arguments diminished the jury's sense of responsibility for imposing a capital sentence, is entitled to use that decision to challenge his capital sentence in a federal habeas corpus action. The Court ruled that he cannot not, because *Caldwell* announced a new rule and did not come within the exception for rules necessary for fundamental fairness of the criminal proceeding.

On October 5, 1990, the trial court summarily denied Sawyer's application as repetitive and without merit. The Louisiana Supreme Court denied Sawyer's supervisory writ without opinion on October 7th, 1990. On October 8, 1990, Sawyer filed his second petition for federal habeas corpus relief in this Court.[6] In this second petition, the present petition before the Court, Sawyer raises six grounds for relief, described in his petition as follows:

1) Mr. Sawyer was denied due process and a meaningful and individualized sentencing determination because of trial counsel's unreasonable failure to investigate and present compelling and readily available mitigating evidence and to obtain defense mental health experts in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

2) Mr. Sawyer was incompetent to proceed to trial, and while the issue of competency was raised, it was not adequately resolved because the sanity commission members rendered an incompetent evaluation in violation of his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3) Mr. Sawyer will remain conscious during his execution by electrocution and will be unnecessarily tortured; his execution will not comport with this society's evolving standards of decency and will violate the Eighth and Fourteenth Amendments to the United States Constitution.

4) Louisiana's electric chair is riddled with design defects which cause excessive burning, mutilation, and pose a future risk of even greater torture in violation of the Eighth and Fourteenth Amendments to the United States Constitution and article 1, section 20 of the Louisiana Constitution.[7]

5) The Eighth Amendment to the United States Constitution forbids the State from carrying out the imposition of the death penalty to Mr. Sawyer [sic] by electrocution.

6) The State hid exculpatory evidence, failed to reveal that its star witness had been promised immunity in exchange for her testimony, and knowingly offered false testimony at trial in violation of Mr. Sawyer's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

### III.

As this is Sawyer's second federal habeas petition, the Court must first consider whether his claims are barred pursuant to Rule 9(b) of the Rules Governing Section 2254 Cases. Rule 9(b) provides:

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. § 2254 Rule 9(b) (West 1991).

### A. Successive Claims

■ A claim in a second federal habeas corpus action may be barred as a succes-

---

6. At that time, Sawyer's execution was scheduled for October 10, 1990. On October 9, 1990, the Governor of Louisiana, Governor Roemer, granted a reprieve and stay of execution for thirty days so that the Pardon Board could fully review the case. On November 13, 1990, Judge Joseph Tiemann, District Judge of the Twenty-Fourth Judicial District Court issued a warrant for Sawyer's execution to be carried out on December 14, 1990. On December 12, 1990, this Court stayed the execution to conduct an evidentiary hearing on Sawyer's claim that Louisiana's electric chair is defectively designed.

7. Federal habeas corpus relief can be granted only for violations of the Constitution or laws of the United States. See Wills v. Egeler, 532 F.2d 1058 (6th Cir.1976). For that reason, the alleged violation of Louisiana's constitution is not discussed herein.

sive claim "only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." *Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963). Once it is shown that the claims raised in the new petition were determined against the petitioner on the merits on the prior petition, the petitioner has the burden to show that "the ends of justice would be served by a redetermination of the ground." *Id.* 373 U.S. at 16, 83 S.Ct. at 1078. In *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Supreme Court undertook to provide the lower courts with a definition of "the ends of justice". The Court held that "the 'ends of justice' require federal courts to entertain [a successive] petition only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." *Id.* 477 U.S. at 454, 106 S.Ct. at 2627.

In the case at bar, three of the six grounds for relief contained in Sawyer's present petition, Claims 1, 3, and 5, were determined against him on the merits on his first petition. Thus, Sawyer has the burden to show that the ends of justice would be served by reaching the merits of these successive claims.

*Claim 1: Ineffective Assistance of Counsel Due to Failure to Present Mitigating Evidence at the Sentencing Phase*

■ Sawyer alleges in Claim 1 that he was denied a proper sentencing determination because his trial counsel failed to obtain mental health experts and present at the sentencing phase evidence in mitigation of the death penalty. Sawyer does not dispute that he specifically raised this same ground for relief in his first federal habeas petition, Claim III, Fact 8, and that it was rejected on its merits. The only difference is that now Sawyer has come forward with additional evidence to support this claim.

The evidence in support of Claim 1 shows Sawyer's organic brain damage, moderate mental retardation, and various other mental disorders, as well as his history of childhood abuse, neglect, and tragedy. In addition, there is evidence that Sawyer was hospitalized in four mental health facilities, that he received shock therapy, and that in 1967, he was adjudicated incompetent by the State of Tennessee.

Sawyer's trial counsel submitted similar evidence at the sentencing phase. The jury heard extensive testimony from Sawyer's sister and brother-in-law about Sawyer's mother's suicide, his mental instability, his abusive and neglectful father, and his commitment to a mental hospital and shock therapy.

Sawyer contends that if the additional evidence now offered had been introduced at the sentencing phase, it would have reduced his moral culpability, and the jury would have rejected the death penalty for a life sentence. Sawyer does not allege that any of this additional evidence demonstrates his factual innocence. For this reason, he cannot carry his burden of proof to show that the ends of justice would be served by reaching the merits of this issue again. Therefore, Claim 1 of Sawyer's petition is barred under Rule 9(b) as a successive claim.

*Claims 3 and 5: Execution by Electrocution*

■ Claim 3 alleges that Sawyer will remain conscious during the electrocution and will be unnecessarily tortured. Claim 5 alleges that execution by electrocution is cruel and unusual punishment. Sawyer previously raised these same grounds for relief in his first federal habeas petition, at Claim XV:

> Electrocution involves physical torture and is an excessively cruel and unnecessary method of extinguishing human life. Electrocution requires massive doses of electricity to the condemned person for several minute before death. The condemned person does not become unconscious until after the person has endured a period of agonizing pain. Electrocution disfigures and physically distorts the condemned person.

As these grounds were determined to be without merit on Sawyer's first petition,[8] Sawyer must make a colorable showing of factual innocence to avoid the bar.

In support of Claims 3 and 5, Sawyer submitted an affidavit from Dr. Harold Hillman, Director of the Unity Laboratory in Applied Neurology at the University of Surrey, England, who opines that electrocution is intensely painful. Sawyer also cites various cases and macabre newspaper accounts of electrocution, as well as professional treatises on the subject of electrocution. In addition, Sawyer submitted a post-execution photograph of Robert Wayne Williams. The 1983 photograph shows burns on Williams' head and leg. This evidence relates only to Sawyer's death penalty, and has no bearing on his factual guilt or innocence. Therefore, the Court finds that the ends of justice would not be served by a redetermination of this issue, and Claims 3 and 5 are barred under Rule 9(b) as successive claims.

### B. Abuse of the Writ

When a claim is raised for the first time in a second federal habeas petition, the Court must examine the claims for abuse of the writ. *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078. Under the abuse of writ doctrine, the new claims may be dismissed on the ground that the petitioner failed to raise the claims in his earlier petition through inexcusable neglect. *See Moore v. Butler,* 819 F.2d 517, 519 (5th Cir.), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3201, 96 L.Ed.2d 688 (1987) (quoting *Jones v. Estelle,* 722 F.2d 159, 163 (5th Cir.1983) (en banc), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984)). The Supreme Court recently clarified that the standard for abuse of the writ through inexcusable neglect is "cause and prejudice". *See McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). Once the state pleads with clarity and particularity that the petitioner has abused the writ through inexcusable neglect, the burden then shifts to the petitioner to show a cause which excuses his failure to include the new claim in his first petition and actual prejudice resulting from the omission. *Id.*

Cause requires a showing that the failure to file the claim in the first petition was due to some objective factor such as interference by officials which made filing the claim impracticable, reasonable unavailability of the factual or legal basis for the claim, and constitutionally ineffective assistance of counsel. *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). The court must examine "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *McCleskey,* —— U.S. at ——, 111 S.Ct. at 1472. Prejudice requires a showing of actual prejudice amounting to a denial of fundamental fairness. *Murray,* 477 U.S. at 494, 106 S.Ct. at 2648. Because the petitioner must show both cause and prejudice, a court need not consider whether there is actual prejudice to the petitioner when he has failed to show cause. *McCleskey,* —— U.S. at ——, 111 S.Ct. at 1474 (citing *Murray,* 477 U.S. at 494, 106 S.Ct. at 2649.) However, even where the petitioner is unable to show cause, he may still avoid the bar to his new claim if he shows that a "fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey,* —— U.S. at ——, 111 S.Ct. at 1470. This exception to the cause requirement exists where the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649.

In the case at bar, the State has sufficiently pled abuse of the writ. Sawyer's prior writ history reveals that the present petition raises three new claims: 1) Claim 2 alleges that Sawyer was incompetent to proceed to trial and that this fact would have been discovered but for the inadequate psychiatric evaluation rendered by

---

**8.** The district court ruled that the grounds for relief raised on Claim XV were conclusory in nature, and that Sawyer offered no fact or law to justify their consideration. This was a determination on the merits, which Sawyer did not appeal.

the sanity commission; 2) Claim 4 alleges that Louisiana's electric chair is defectively designed so that it causes unnecessary mutilation and torture, and that these defects are such that even greater harm may be caused during future executions; and 3) Claim 6 alleges that the State withheld exculpatory evidence. Thus, Sawyer must show a legitimate cause for failing to file these claims in his first federal habeas petition.

*Claim 2: Competency to Proceed to Trial*

 Sawyer makes absolutely no showing as to why this claim was not included in his first petition. There is no dispute that the question of Sawyer's competency was raised prior to his trial. He had sufficient basis to raise the competency issue on his first habeas proceeding. In addition, Sawyer has not offered any evidence of innocence to satisfy the fundamental miscarriage of justice exception to the cause requirement. Accordingly, Claim 2 is barred under Rule 9(b) as an abuse of the writ.

*Claim 4: Louisiana's Electric Chair is Defectively Designed*

 Sawyer argues that State has concealed since Wayne Williams' execution in 1983, that its electric chair has design defects which cause mutilation and torture. While there is no evidence to show concealment, it is a fact that Louisiana does not maintain any maintenance or repair records on the electric chair, reports about the executions, or documentation on the post-execution condition of the prisoner's body.

In support of Claim 4, Sawyer submitted significant evidence that was not in existence at the time of his first habeas proceeding. This evidence is affidavits from people who witnessed executions in Louisiana after the time Sawyer filed his first federal habeas petition. These eyewitness affidavits are crucial to his claim given Louisiana's lack of official documentation on the electric chair and executions. It cannot seriously be disputed that Sawyer will suffer actual prejudice if Louisiana's electric chair does not meet constitutional standards. As Sawyer has demonstrated both

cause and prejudice, the Court finds that Claim 4 is not an abuse of the writ. The merits of this claim are discussed in section IV below.

*Claim 6: Failure to Reveal Exculpatory Evidence*

Sawyer contends that the State hid exculpatory evidence. Specifically, Sawyer contends that despite a pre-trial request for "any exculpatory evidence favorable to the defendant," the State concealed that: 1) its key witness, Cynthia Shano, was promised immunity in exchange for her testimony; 2) Wayne Shano, the four-year-old son of Cynthia Shano, told a police detective that Sawyer did not set Arwood on fire and tried to stop Lane from doing so; 3) Cynthia Shano knew Charles Lane prior to the commission of the crime; and 4) Cynthia Shano lied when she testified at trial that she does not drink.

 The evidence supporting Sawyer's allegation that Shano was promised immunity is seven affidavits from people who know her stating that she either told them or told someone else who repeated to them that she made a deal with the State to testify against Sawyer in order to save herself. Likewise, an affidavit is the supporting evidence for Sawyer's allegation that Wayne Shano exculpated Sawyer. Diane Thibodeaux, a close friend of Cynthia Shano, states in her affidavit that she was present when the police detective interviewed Wayne Shano, and that Wayne said "daddy tried to help the lady"[9] and that the "other man" had lit Arwood on fire. The evidence supporting Sawyer's claim that Cynthia Shano knew Charles Lane prior to the murder is a 1981 letter from William Rausch to Shano. At that time Rausch was a prisoner at the Jefferson Area Community Correction Center. In his letter he states that he spoke with Charles Lane in prison and Lane indicated that he was a good friend of Shano's. Finally, the evidence supporting the claim that Shano lied on the stand about her drinking consists of the prosecutor's handwritten notes for his direct examination of Detective Geil-

**9.** Wayne Shano called Robert Sawyer 'Daddy", but Sawyer was not Wayne's father.

ing which indicate that the investigating detective smelled the odor of alcohol on Shano's breath.

Sawyer offers no explanation for failing to produce this evidence on his first federal habeas petition. The legal and factual support for this claim was reasonably available at the time of Sawyer's first petition. There is no reason why the affidavits in support of this claim could not have been obtained earlier. With respect to the evidence that Lane knew Shano before the murder, the letter from Rausch to Shano was available from the District Attorney, who gave open file discovery to Sawyer's first habeas counsel. Likewise, the notes regarding the odor of alcohol on Cynthia Shano's breath could have been found in the District Attorney's files.

■ Sawyer does not allege· that his first habeas counsel was constitutionally ineffective for failing to investigate and obtain this evidence. The Court nevertheless addresses the issue here in the interest of avoiding any further delays. In order to demonstrate ineffective assistance of counsel, a petitioner must show that his counsel's performance is constitutionally ineffective under the standard established in *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984): (1) that his attorney's performance fell below an objective standard of "reasonably effective assistance"; and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Even if Sawyer's first habeas counsel erred in failing to obtain this evidence [10], Sawyer cannot show that he was prejudiced.

■ It is unlikely that any of this evidence would have supported habeas relief in the first proceeding because of the unlikelihood that the evidence would have

changed the outcome of the trial. *See U.S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (to obtain relief for a failure to reveal exculpatory evidence it must be shown that the suppressed evidence would have an effect on the outcome of the trial.) There is substantial evidence that the State did *not* offer Shano a deal for immunity, *see* affidavits of Cynthia Shano and former District Attorney, Phillip Boudesque, and that Wayne Shano *implicated* his father when he was questioned by the police detective, *see* police report of Detective Paul E. Livaudais. In addition, the letter from Rausch to Shano is dated January 27, 1981, subsequent to Sawyer's September, 1980 trial and conviction. Thus, the State did not have any knowledge of the letter at the time of Sawyer's trial. With respect to the odor of alcohol on Shano's breath, there was other evidence of Shano's drinking that could have been used to impeach her, *see* Police Report, and, in any event, it is highly unlikely that such evidence would have effected the outcome of the trial given the overwhelming evidence of Sawyer's guilt.

Thus, Sawyer has not shown cause for failing to present this claim in his prior petition. Sawyer also has failed to show that a fundamental miscarriage of justice will result if the Court does not rule on the merits of Claim 6. The evidence of Sawyer's guilt is so overwhelming that even considering the allegedly exculpatory evidence, it cannot be said that the alleged failure to reveal that evidence resulted in the conviction of an innocent man.

### IV.

■ After reviewing the pleadings, the Court determined that an evidentiary hearing on Claim 4 was warranted due to the conflicting affidavits from the parties' experts.[11] At the conclusion of the hearing,

---

**10.** The Court makes no finding that Sawyer's first habeas counsel rendered less than "reasonably effective assistance."

**11.** One of the expert affidavits submitted by Sawyer in support of Claim 4 is the affidavit of Fred Leuchter. The Court recently read in the Times–Picayune newspaper that Leuchter was charged by the State of Massachusetts with

practicing engineering without a license. *See* Times–Picayune, June 19, 1991, at A–11. The article reported that on June 11, 1991, Leuchter signed a consent agreement with the Massachusetts board that licenses engineers stating: "I am not and never have been registered as a professional engineer" and that he had nevertheless represented himself as an engineer in

the Court found that Louisiana's electric chair meets constitutional standards. The Court rendered oral reasons and advised the parties that written reasons would follow in this opinion. The Court's reasons are set forth below.

The issue presented in Claim IV is whether the electric chair used by the State of Louisiana is defectively designed in such a manner that execution in the chair will result in unnecessary pain and suffering in violation of the Eighth Amendment of the United States Constitution, which proscribes cruel and unusual punishment. Any argument that execution by electrocution is unconstitutional per se is foreclosed by legal precedent. *See e g, In re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947).

Louisiana's electric chair uses head and leg electrodes to deliver current to the prisoner's body. The purpose of the head electrode is to deliver current directly to the brain to render the prisoner unconscious and block his ability to feel pain. The evidence is that electrocution in Louisiana's electric chair can cause some blistering and burning in the areas where the electrodes are strapped to the head and legs. There are two aspects of the design of the chair that are responsible for the burning: 1) the elongated shape of the head electrode accentuates the leading edge effect, which causes current density between the end of the head electrode and the ear[12]; and 2) some resistance is created by air in the natural cavities of the sponges placed between the electrode and the prisoner's skin. These conditions create electrical resistance and thereby result in some electricity being channelled away from the brain. There was also testimony that the placement of the leg electrodes near the knee and shin in a thin skin area could cause burning.

Sawyer's expert, Dr. John Webster, concluded that these conditions resulted in unnecessary burning and mutilation. The State's expert, Dr. Michael Morse, concluded that while a circular head electrode would be an improvement to the elongated shape, the difference is not significant because enough current still reaches the brain to render the prisoner unconscious. Morse further testified that despite the air in the sponge, the resistivity of the natural sponge is a proper level to carry out a humane execution. He also testified that it was advisable to wring out the sponge in order to prevent moisture from dripping onto the electrode straps. Both experts agreed that the leg straps should be very secure to prevent arcing.

The fact that the design of Louisiana's electric chair is subject to improvement, does not necessarily mean that an execution in the chair will not meet constitutional standards. To meet constitutional muster, an execution, as much as humanly possible, should minimize the risk of unnecessary pain, violence and mutilation. *See Glass v. Louisiana*, 471 U.S. 1080, 1086, 105 S.Ct. 2159, 2163, 85 L.Ed.2d 514 (1985). "The State is not required to employ the most modern state of the art technology in implementing the death penalty or to foresee and meet every problem which conceivably could ever arise during an execution." *Buenoano v. Dugger*, 1990 WL 119637 (M.D.Fla. June 22, 1990) (citing *Glass*, 471 U.S. at 1086, 105 S.Ct. at 2163).

The Court accepts the testimony of the State's expert that electrocution in the

---

several dealings with various states that use the death penalty. The agreement also required Leuchter to stop disseminating the "Leuchter Report" in which he purports to be an engineer and offers the view that the gas chambers in Nazi concentration camps were never used for mass killings. *Id.*

Leuchter's affidavit in the case at bar states: "I have been involved in electrical engineering work for 26 years." Interestingly, although Sawyer relied to a great extent on Leuchter's affidavit in his petition for habeas corpus, he did not call Leuchter as a witness at the evidentiary hearing, nor did he offer his affidavit as evidence.

12. The leading edge effect is based on the principle that current tries to travel the shortest path. The theory as it applies in this case is that due to the elongated design of the electrode, the narrow end of the electrode, or the leading edge, is closer to the leg electrode than any other part of the head electrode resulting in a concentration of current under the leading edge.

**308**

manner performed by the State of Louisiana provides sufficient current to the brain to result in instantaneous disruption of the brain's ability to operate, immediately rendering the condemned unconscious and unable to feel pain. Although there may be some injury to the body, there is no perception of pain. For this reason, Louisiana's electric chair does not cause wanton or unnecessary infliction of pain. Accordingly, the Court finds that the design of Louisiana's electric chair does not violate the mandates of the Eighth Amendment. *See Ritter v. Smith,* 568 F.Supp. 1499, 1526–27 (S.D.Ala.1983), *aff'd in part and rev'd in part on other grounds,* 726 F.2d 1505 (11th Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984) (a properly performed electrocution "involves an instantaneous blocking of any sensory perceptions or instantaneously rendering the person unconscious so that he was unable to feel any pain....")

While Claim IV raises only the issue of defective design, testimony was introduced relating to the operation and maintenance of the electric chair, as well as the procedures for carrying out an execution. On these matters, the evidence is that Louisiana's operation, maintenance, and procedures are appropriate to carrying out constitutional executions by electrocution. The evidence established no constitutional violation.

### V.

In conclusion, all of the claims raised in this petition, except Claim 4, are barred under Rule 9(b). Sawyer is not entitled to

habeas corpus relief on Claim 4 because he has failed to establish a constitutional violation.

Accordingly,

IT IS ORDERED that the petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that judgment shall be entered against the petitioner, Robert Sawyer, and in favor of the respondent, John Whitley, Warden, Louisiana State Penitentiary, Angola, Louisiana DISMISSING WITH PREJUDICE the Petition for Writ of Habeas Corpus. IT IS FURTHER ORDERED that the stay of execution entered on December 12, 1990 is VACATED [13].

---

**13.** The Louisiana Legislature recently amended and reenacted Louisiana Revised Statute § 15:569(A) and (B) to make lethal injection the manner of execution for every sentence of death executed after September 15, 1991. 1991 La.Act 159 (July 2, 1991). The amended statute reads as follows:

§ 569. Place for execution of death sentence; manner of execution

A. Every sentence of death executed in this state prior to September 15, 1991, shall be by electrocution, that is, causing to pass through the body of the person convicted a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of the person convicted until such person is dead. Every sentence of death imposed in this state shall be executed at the Louisiana State Penitentia-

ry at Angola. Every execution shall be made in a room entirely cut off from view of all except those permitted by law to be in said room.

B. Every sentence of death executed on or after September 15, 1991, shall be by lethal injection: that is, by the intravenous injection of a substance or substances in a lethal quantity into the body of a person convicted until such person is dead. Every sentence of death imposed in this state shall be executed at the Louisiana State Penitentiary at Angola. Every execution shall be made in a room entirely cut off from view of all except those permitted by law to be in said room.

Having found that Louisiana's electric chair meets constitutional standards, there is no reason to maintain the stay of Sawyer's execution until September 15, 1991.